17580

STATE, Respondent, v. Charles Edward BROOKS, Appellant

(111 S. E. (2d) 686)

*Messrs. Donald James Sampson* and *Willie T. Smith, Jr.,* of Greenville, *for Appellant,*

*Messrs. James R. Mann, Solicitor,* and *Clarence A. Cappell,* of Greenville, *for Respondent,*

November 9, 1959.

STUKES, Chief Justice.

Appellant, who is a young unmarried Negro man, was convicted of rape and sentenced to death. Secs. 16-71, 72, Code of 1952.

The evidence for the State was that the prosecutrix and her sister-in-law, both young married white women, were walking along a street of the City of Greenville after dark on their way to catch a bus to rejoin a family party with which they had come to the city from their home in an adjoining county. Appellant accosted them saying that he was a prison escapee and had already killed two girls, and at pistol-point threatened their lives and compelled them to enter an alley which led to an areaway adjacent to a church where they were both raped by him. He held the pistol on them until he laid it down and the companion of prosecutrix picked it up, ran to a nearby drive-in (restaurant) and gave the alarm. She reported that appellant still had the prosecutrix in the alley; several people went to the rescue and the prosecutrix was seen to jerk away from appellant who ran behind a house. The police, who had been called by the manager of the restaurant, arrived and by the aid of a spotlight on their car found appellant hiding in the shrubbery and arrested him.

He was taken to the police station, identified by the prosecutrix and her companion, and made and signed a written statement to the officers. In it he admitted intercourse with both women at the time and place but made no reference to force or to the pistol. However, in his testimony at the trial he admitted that he had a loaded pistol but said that it remained in his pocket until he dropped it at the scene. It was in evidence.

The prosecutrix and her companion were taken by the police to the emergency room of the General Hospital where they were examined by a physician. He testified that he found in the organ of the prosecutrix male sperm and a foreign, blackish hair. They were then taken back to the police station and separate written statements were taken from them by different officers, which were offered in evidence by appellant. There was no important conflict between the separate statements or between the contents of them and

the testimony at the trial by the affiants, both of whom testified.

There is no need to further review the evidence because there can be no doubt of the sufficiency of it to convict.

Appellant's first question on appeal is that the trial judge should have postponed the trial longer than he did. The alleged crime was committed on Jan. 3, 1959. Appellant was arraigned and entered his plea of not guilty on March 9 and the case was set for trial on March 12. However, upon motion of appellant's counsel it was continued to March 17.

Although formally appointed by the court to defend on March 9 (because appellant had no paid counsel) the appointed counsel had been in the case from the beginning, and had attended in behalf of appellant the preliminary hearing on March 3 where they were given opportunity to examine the State's witnesses. It is noted above that the trial was continued upon their motion. That appears to have been satisfactory as there was no motion on March 17 to continue further. It may be added that the trial record shows a skillful defense of appellant which may also be said of the preparation and presentation of the appeal.

Upon this question both appellant and respondent cite *State v. Lytchfield,* 230 S. C. 405, 95 S. E. (2d) 857, 859, 66 A. L. R. (2d) 263, which affirmed the denial of continuance and the following was said:

"The granting or refusal of a motion for continuance is within the discretion of the trial judge and his disposition of such a motion will not be reversed on appeal unless it is shown that there was an abuse of discretion to the prejudice of appellant. A multitude of cases to this effect will be found in 7 S. C. Digest, Criminal Law, 586 *et seq.,* p. 504 *et seq.* and supplement. Review of them shows that reversals of refusal of continuance are about as rare as the proverbial hens' teeth."

Such a rare case is *State v. Livingston,* 233 S. C. 400, 105 S. E. (2d) 73, which is relied upon by appellant. In the trial of that capital case no defense

was interposed although there was in the record a hint of the existence of such, and we reversed for opportunity to present it at another trial. In the trial of the instant case the defense of consent of the prosecutrix was vigorously asserted and evidence introduced in an effort to establish it.

We find no error, *i. e.,* abuse of discretion, in the refusal of the court to continue the case further than was done.

Turning to the second question, the members of the jury were put upon their *voir dire.* Sec. 38-202, Code of 1952. Defense counsel framed several questions which they requested the court to ask the jurors. Among them were: "No. 2. Would you have any prejudice against a defendant because of his color?" And "No. 3. Would it take less evidence for you to render a verdict against a colored person charged with rape or assault with intent to ravish against a white female, than it would for you to render a verdict against a white person charged with rape or assault with intent to ravish a colored female?" The court complied with respect to No. 2 and asked it from the bench, but he declined No. 3 because it was embraced in substance in No. 2. The court permitted counsel to ask questions as part of the jurors' examination on *voir dire,* and they did ask questions as they chose, including questions relating to race. (This is taken from the agreed statement in the Transcript of Record.) We agree with the trial judge that the substance of No. 3 is included in No. 2 which he allowed and asked. Moreover, counsel asked other similar questions with the permission of the court. Such examination of jurors, its nature and extent, are within the discretion of the trial judge. *State v. Carson,* 131 S. C. 42, 126 S. E. 757. It appears to have been exercised soundly here.

Appellant cites to the contrary *State v. Higgs,* 143 Conn. 138, 120 A. (2d) 152, 54 A. L. R. (2d) 1199. But it appears from the opinion in that case that the trial court excluded from the examination on *voir dire* all questions concerning race prejudice. Not so here, as has been seen. The

cited case is the subject of a note in 9 S. C. Law Quarterly 485.

Received in evidence was testimony of the prosecutrix, of her companion, of appellant and his extrajudicial statement that he had intercourse with the companion at the same time and place as with the prosecutrix. There was no objection to the admission of any of this evidence but because this is a capital case the exceptions thereto will be considered *in favorem vitae,* 7 West's S. C. Digest, Criminal Law, 1030 (1), p. 658. This is the third question argued upon appeal.

Ordinarily, in a criminal prosecution evidence of his commission of another, independent crime is not admissible against the defendant if he objects. But there are well established exceptions to the rule. In *State v. Lyle,* 125 S. C. 406, 118 S. E. 803, 807, they are set out as follows: "Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish, (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial."

The evidence questioned here would clearly seem to be within subdivision (4) of the foregoing quotation, just as the other Aiken forgeries were in *Lyle's case.* The proposition was earlier stated and applied by this court in *State v. Weldon,* 39 S. C. 318, 17 S. E. 688, 689, 24 L. R. A. 126: "Where the evidence tends to show that the series of offences are so connected together as practically to constitute a continuous transaction, then it is competent to receive evidence of such continuous offences."

Appellant's own account of his conduct, as contained in his statement to the officers and his testimony, was so inextricably interwoven with respect to both women that it was practically impossible to segregate the evidence as to

each. As said in some of the cases, it was in effect all one transaction.

The rule, or rather the exception to the rule, which is applicable here has been applied in many cases which involved sex crimes. *State v. Richey,* 88 S. C. 239, 70 S. E. 729. *State v. Whitener,* 228 S. C. 244, 89 S. E. (2d) 701. Annotation, 167 A. L. R. 565, entitled, Admissibility, in prosecution for sexual offense, of evidence of other similar offenses. The following paragraphs are drawn from the cited annotation, at pages 572, 595, 596:

Where the similar offense as to which proof was offered took place on the same occasion as the sexual offense for which conviction was sought and was so connected therewith as to constitute a part of the transaction, or, as commonly said, to be a part of the *res gestae,* evidence of the other offense is admissible upon the trial. (Citing many decisions from seventeen jurisdictions.)

Where it forms part of the *res gestae,* evidence is admissible to show that the defendant ravished, or attempted to ravish, another female, on the occasion of the alleged rape of the prosecutrix. *People v. Murphy,* 53 Cal. App. 474, 200 P. 484; *People v. MacDonald,* 53 Cal. App. 488, 200 P. 491; *People v. Kruvosky,* 53 Cal. App. 744, 200 P. 831; *State v. Ward,* 337 Mo. 425, 85 S. W. (2d) 1; *Com. v. Winter,* 289 Pa. 284, 137 A. 261.

It was held in *People v. Kruvosky, supra,* 53 Cal. App. 744, 200 P. 831, 833, that while evidence of an attempt by the accused to commit rape upon another person at another time would not be admissible in evidence in a prosecution for rape, evidence of such assault by the accused and others upon the companion of the prosecuting witness at the same time and place was admissible, since the two crimes were so intermixed or blended as not to permit full testimony as to one crime without evidence as to the other. The court said: "In the present case the testimony of Jean Stanley (the companion of the prosecuting witness) bearing upon

the crime with which the defendant was charged could not be given without the recital of offenses against herself. The whole brutal story is so interwoven, and its incidents are so inseparable, that proof of the crime with which defendant is charged here must necessarily involve a reference to other offenses by him, such as assault with intent to commit rape." Similar decisions were reached in *People v. Murphy, supra,* 53 Cal. App. 474, 200 P. 484, and in *People v. MacDonald, supra,* 53 Cal. App. 488, 200 P. 491, 492, prosecutions against the companions of the defendant in the *Kruvosky case, supra.* In the *MacDonald case* the court said: "That the acts which the defendant himself committed and the acts which were done or attempted by his associates in the debaucheries of that night were so interrelated as to form a continuous series of offenses, in which each act and offense of each perpetrator was part of the *res gestae* as to all concerned, we entertain no doubt, and, this being so, the testimony of Jean Stanley as to the defendant's brutal and libidinous approaches was admissible, not as proof of another and distinct crime, but as a part and parcel of the series of continuing offenses which went to make up the sordid tragedy in which this defendant played at times an active and at other times a sympathetic part."

. The fact that the other crime as to which evidence was offered tended to prove the commission of the crime with which the defendant was charged was a factor, in *People v. Pargone,* 327 Ill. 463, 158 N. E. 716, 718, a prosecution for rape, in which the court upheld the admission of evidence that immediately following the commission of the offense charged the defendant committed the crime against nature upon another woman who was present. The court said: "The rule which excludes on the trial of one charged with a criminal offense evidence of his commission of other crimes than that with which he is charged applies only to disconnected crimes. If evidence offered has a tendency to prove the crime charged, it is competent, even though it also proves a separate, distinct offense. * * * The fact that a full

investigation of the facts involved in the commission of a crime discloses the defendant's guilt of another crime does not limit the scope of the investigation."

It is the contention of appellant that evidence of his intercourse with the companion of the prosecutrix was irrelevant, and therefore incompetent, because he admitted intercourse with the prosecutrix but contended that it was with her consent which latter became the only issue. However, the testimony of the women, the pistol and other circumstances, tended to prove forcible rape of the companion and, therefore, of the prosecutrix. It was relevant to the issue of consent and, under the authorities cited, was competent evidence of the guilt of appellant of the charge upon which he was on trial, *i. e.,* rape of the prosecutrix.

The following was included in the instructions to the jury: "You will also keep in mind that the prosecuting witness in this case, or the case which we are trying, has as its prosecuting witness one Geraldine Moore although there is evidence in this case in which it might be contended or may be alleged of carnal knowledge of another girl; nevertheless, any alleged offense upon any other person than Geraldine Moore is not the case upon which the defendant is being tried; but, it is this indictment in which it is alleged and contended by the State that the defendant did ravish and carnally know one Geraldine Moore against her will and with violence."

It was not error to admit the now questioned evidence. Appellant mistakenly cites to the contrary, as he claims, *Lovely v. United States,* 4 Cir., 169 F. (2d) 386. But there the question was as to the admissibility of evidence of rape of another woman weeks before the alleged rape upon which defendant was on trial. The only issue was consent, as here. The following was quoted with approval from 20 Am. Jur. 296: "Evidence of other crimes is competent in a criminal trial to prove the specific crime charged when it tends to establish a common scheme, plan, or system embracing the commission of two or more crimes so related to each other

that proof of one tends to establish the others, notwithstanding the general rule excluding evidence which shows, or tends to show, that the accused has committed another crime wholly independent of that for which he is on trial. In other words, the law permits proof of a plan or scheme to commit a series of crimes including the one for which the accused is being tried, and, as tending to show the existence of such plan or scheme, it allows testimony of the commission of crimes other than the one charged, but so related in character, time, and place of commission as to tend to support the conclusion that there was a plan or system which embraced both them and the crime which is charged."

Lastly, it is argued that the court failed to fully instruct the jury on the defense of consent and the burden upon the State to prove the necessary resistance of the prosecutrix requisite to proof of nonconsent.

Appellant's view of the substantive law, which is implicit in this question, is sound (*State v. Taylor,* 57 S. C. 483, 35 S. E. 729) but he is hypercritical of the judge's charge to the jury. That it is afterthought is shown by counsels' failure to suggest it at the conclusion of the charge when given opportunity to do so by the court. Instead, they expressed satisfaction with the instructions. Under these circumstances if this were not a capital case the question would not be considered on appeal.

Analysis of the charge shows that the jury were told that appellant's plea of not guilty cast the burden upon the State to prove him guilty beyond a reasonable doubt, for conviction; and at least twice they were instructed as to the presumption of his innocence.

With reference to the necessity of force and nonconsent the statute (Sec. 16-71) was read to the jury and it is plain and simple. In addition, no less than six other times in the charge the jury were told of the necessity of force and nonconsent. Then they were instructed with respect to the meaning of "force" as follows:

"Forcibly does not mean that actual force has to be used at the time; but constructive force may be used in the sense of fear of violence, or impending danger, or threats of violence whereby the consent of the woman was obtained by use of threats or fear of violence."

And with respect to "consent", as follows:

"Without her consent does not mean that consent is obtained or gained when force is used to gain or obtain the consent of the woman. Forcibly and without consent are used together and if the consent is gained by force, although there is consent but nevertheless against her will and desire, brought about by violence, force or threats of violence, then the sexual act is without the consent of the female."

There was no error or omission in the charge, as now contended by appellant.

The whole record has been carefully scrutinized and considered in the light of the earnest argument of appellant's counsel and no error has been found. The trial was entirely fair and without prejudice. The able and experienced trial judge made the following observation in open court after the jury had rendered their verdict:

"It is also to the credit of the City of Greenville and to the State of South Carolina that the trial of this case was begun, carried through and has been finished in a calm, dispassionate manner, without prejudice, without any clashes, without any display of temper, but in the spirit of fairness and impartiality and in conformity with the judicial and time-honored principles of this State."

Affirmed.

TAYLOR, OXNER, LEGGE and MOSS, JJ., concur.